GLEN BODINE, Plaintiff-Appellee, v. THE CIVIL SERVICE COMMISSION *et al.*, Defendants-Appellants.

Fourth District   No. 4—86—0445

Opinion filed January 29, 1987.

Neil F. Hartigan, Attorney General, of Springfield (Roma Jones Stewart, Solicitor General, and Cynthia M. Bretthauer, Assistant Attorney General, of Chicago, of counsel), for appellants.

James M. Drake, of Springfield, for appellee.

JUSTICE GREEN delivered the opinion of the court:

On March 16, 1983, the director of the defendant Department of Central Management Services, State of Illinois (Management Services), acting pursuant to section 9(5) of the Personnel Code (Ill. Rev. Stat. 1981, ch. 127, par. 63b109(5)), approved written charges issued by Management Services against plaintiff, Glen Bodine, seeking his discharge from his position as information systems executive I. Subsequently, hearings on the charges were held before a hearing officer for defendant Civil Service Commission of the State of Illinois (Commission). After the hearings, the hearing officer recommended to the Commission that none of the charges had been proved. On December 14, 1983, the Commission rejected the hearing officer's recommendation and ordered plaintiff discharged.

On January 17, 1984, plaintiff filed a complaint for administrative review in the circuit court of Sangamon County (Ill. Rev. Stat. 1981, ch. 127, par. 63b111a). On October 12, 1984, the court affirmed the decision of the Commission. Plaintiff appealed to this court which reversed and remanded to the Commission with directions. (*Bodine v. Civil Service Com.* (1985), 134 Ill. App. 3d 341, 480 N.E.2d 160.) On remand, the Commission entered a new order on July 17, 1985, making new findings but still ruling that plaintiff should be discharged. On August 21, 1985, plaintiff filed a complaint in the circuit court of Sangamon County seeking administrative review of the new order of

the Commission. On May 15, 1986, the circuit court pronounced in open court an order finding the Commission decision to be contrary to the manifest weight of the evidence and reversing that order. On May 30, 1986, the circuit court entered a further order making findings of fact and conclusions of law. Defendants have appealed.

The charges brought against plaintiff before the Commission accused him of "conduct unbecoming a professional management employee, abuse of authority, [and] harassment and interference in an internal investigation." The matter was referred by the Commission to a hearing officer who conducted hearings and, on November 29, 1983, presented to the Commission a written document making numerous findings and concluding that the evidence was not sufficient to prove any of the charges. That conclusion was rejected by the Commission when it entered the discharge order of 1983. On the prior appeal, this court reversed and remanded because (1) the Commission's decision had been tainted by a letter written by the director of Management Services to the Commission, and (2) the Commission had failed to make findings sufficient to enable a reviewing court to make an intelligent decision (*Allied Delivery System, Inc. v. Illinois Commerce Com.* (1981), 93 Ill. App. 3d 656, 417 N.E.2d 777).

The Commission order after remand recited that the Commission had reconsidered without reference to the earlier letter from the director. The order then listed certain charges which it found to have been proved, reciting a brief summary of the evidence that supported the charge. On appeal to this court, the defendants maintain that the evidence was sufficient to support the determination of the Commission and that the circuit court was in error in ruling to the contrary. Plaintiff responds by asserting that the circuit court correctly determined that the Commission's decision on remand was contrary to the manifest weight of the evidence. Plaintiff also contends that the circuit court's decision should be upheld because the Commission did not follow the mandate of this court's decision on the first appeal.

The evidence was undisputed as to plaintiff's position and responsibility. He was employed with Management Services as an information systems executive I. In that capacity, he was the night manager at the Central Computer Facility. Among his duties were: (1) monitor operations personnel in the daily performance of their assigned duties; (2) enforce management directions in areas such as installation security, employee conduct, and the maintaining of accurate attendance records; and (3) discuss problem areas with appropriate management personnel in order to resolve problems. Included were both functional and procedural areas as well as personnel problems. Plaintiff had

been in this position since November 1, 1981. The charges found by the Commission to have been proved against plaintiff can be put in five basic categories. Each involved computer operators holding positions in Management Services' chain of command.

The most serious charges involved plaintiff's alleged conduct toward Cheryl Allen, who had been promoted to the rank of computer operator II in September 1982. At that time she was advised by superiors that her bad record in regard to being absent must be corrected. In January 1983, just before the events in question, plaintiff had conducted a two-hour disciplinary session with Allen and her supervisor. She was criticized for various matters, including absenteeism. Beginning February 1, 1983, she was absent for eight days. She claimed some of her absences resulted from severe weather, but her supervisor testified that others were getting to work on those days. On one of the days, she called a male supervisor and said she was not coming in because she had a "discharge and had a test for a social disease." Various witnesses indicated that persons, including plaintiff, responsible for the computer operators were concerned with Allen's performance and were discussing the possibility of discharging her.

The evidence was undisputed that on the evening of February 17, 1983, Allen approached plaintiff when he was in her work area and told him of her fears that she was to be discharged. Allen testified, and plaintiff denied, that he told her not to discuss the matter with Tom Conway, labor relations administrator for Management Services, and that he, plaintiff, had held back a movement to fire her. The parties agree that after this conversation, plaintiff, at Allen's request, gave her a copy of her attendance record for her to give to a union steward.

Undisputedly, on the same night as the previously described decision, another discussion took place between Allen and plaintiff. No one else was shown to have been within hearing and no one else testified to the nature of the conversation. The substance of the conversation went to the heart of Allen's charge. She testified that plaintiff told her: (1) a movement was underway to fire or suspend her or, at least, have her shift changed; (2) she should not seek help of others for only he could help her; (3) he had been responsible for her promotion and she was indebted to him; (4) he could prevent or lessen sanctions made against her if she would meet him in his car at a shopping center at 1:06 a.m. and have pencil and paper with her so that he could give her certain information (Allen worked a shift from 3:15 p.m. to 11:30 p.m.). Plaintiff denied making the foregoing statements and testified that he told her she had created her problem and he

could not help her. Several of Allen's co-workers testified that after the conversation, Allen was upset and teary-eyed. Most of those so testifying were persons who also made charges against plaintiff. The evidence was undisputed that Allen did not meet with plaintiff at the described shopping center.

The Commission found Allen's charges to have been proved.

One of Allen's co-workers who testified about her emotional state after the February 17 conversation with plaintiff was Harvey Williams, who had the same job title as Allen. Williams also testified about a conversation with plaintiff in plaintiff's office on January 12, 1983. According to Williams, plaintiff made the following statements: (1) he asked Williams "[w]ho's screwing who" in the tape media section where Allen, Williams, and others worked; (2) he informed Williams that Greg Caldwell, a black who was Williams' immediate supervisor, had received a poor performance rating and then said that those making the rating had "put that nigger in his place." Plaintiff denied the statements and no other witness testified as to the content of the statements. The Commission found Williams' charges to have been proved.

Theresa Bossmann was another co-worker of Allen's who was shown to be a close friend of Allen's and who testified about Allen's being upset and teary-eyed on the night of February 17. Bossmann also testified that on a day in the two-week period preceding January 12, 1983, plaintiff had looked at her and told her that her breasts looked larger and asked her why and later asked her whether she was pregnant. Bossmann stated that the foregoing was not couched in any terms relating to her work or her ability to be present at work and that she considered the questions to be improper and an invasion of her privacy. Plaintiff denied making either statement. The Commission found Bossmann's charges to have been proved.

The Commission also found a charge made against plaintiff Tom Rebbe, another of Allen's co-workers, to have been proved. Rebbe testified that after Allen had brought charges against plaintiff, the latter came up to him and asked Rebbe if Allen was trying to get even with him for his disciplining her. According to Rebbe, plaintiff then stated that he was not going to back down and indicated that he would likely sue those accusing him, thereby causing those people to spend substantial sums of money.

■ A court reviewing a decision of the Commission approving a discharge of a certified employee must determine whether: (1) the factual determinations of the Commission are contrary to the manifest weight of the evidence; and (2) the proven facts constitute cause for

dismissal. (*Department of Mental Health & Developmental Disabilities v. Civil Service Com.* (1981), 85 Ill. 2d 547, 426 N.E.2d 885; see Ill. Rev. Stat. 1983, ch. 127, par. 63b111.) Here, no substantial argument is made that if the charges which the Commission found to have been proved were proved, valid "cause" for dismissal existed. Allen's testimony indicated that plaintiff attempted to lure Allen into a situation where he could coerce her into extending sexual favors to him. This would have been highly improper conduct by a supervising employee over an employee under his supervision. The alleged bigoted remarks in regard to Caldwell cannot be condoned and required a substantial sanction. Similarly, the remarks plaintiff was purported to have made to Bossmann also required serious sanction. Plaintiff's threat to sue those bringing charges was improper to the extent it implied that the suits would be in retaliation of the filing of charges regardless of the merits of the charges.

■ The circuit court had found the Commission's findings that plaintiff had committed the conduct described by the various employees to be contrary to the manifest weight of the evidence. That court laid great emphasis on the fact that the plaintiff and the various complainants were the only persons having knowledge of what took place during the various episodes in question. The court pointed out how hard it was for plaintiff to disprove the charges merely by his own self-serving testimony. Some circumstances cast doubt on the testimony of the complainants. Allen's version of events seemed somewhat unlikely. Allen, Johnson, Bossmann, and Rebbe were shown to be friends and could have been seeking to cause trouble for plaintiff. Other employees testified that the conduct charged against plaintiff was inconsistent with behavior they had observed on plaintiff's part. The hearing officer who had heard and viewed the witnesses was not satisfied with the proof of the charges. Nevertheless, the factual determinations of the Commission are entitled to substantial deference. (*Department of Mental Health & Developmental Disabilities v. Civil Service Com.* (1981), 85 Ill. 2d 547, 416 N.E.2d 885.) Those determinations depend largely upon whether the complainants' versions or those of the plaintiff were more credible. However, the fact that four different people contradicted plaintiff in regard to his total explanation tends to. support the factual determination of the Commission. We do not conclude that a determination contrary to that of the Commission is clearly evident. Accordingly, we hold the factual determinations of the Commission were not contrary to the manifest weight of the evidence.

■ The first of plaintiff's contentions that the Commission failed

to follow the mandate on remand concerns the letter which the director of Management Services had written to the Commission. The order of the Commission on remand recites that the letter was not considered. This court did not require nor did it suggest that a new hearing be held. One of the commissioners had died since the original order had been entered and a different commissioner participated in entry of the order on remand. Plaintiff complains because, on remand, a copy of a newspaper article about the case accompanied the information about the case which the executive secretary of the Commission sent to the commissioners prior to their entry of their order on remand. The secretary had also been the hearing officer. The newspaper article concerned his report and the Commission's original order. The director of Management Services was quoted as speaking of the importance of a ruling which would not require direct corroboration to prove sexual misconduct upon the part of an employee. Plaintiff maintains that inclusion of the article with the papers sent was highly improper. We agree that it should not have been done. However, Management Services was not responsible for its being done and we do not find it to have prejudiced the Commission. The mandate was not violated in regard to the requirement that the Commission disregard the letter described.

The mandate was also fulfilled in regard to its fact-finding requirement. Specific findings were made as to each of the four charges which the Commission found to have been proved. The Commission did make a finding that the record contains no evidence which supported "a contention that Allen was motivated to pursue a false charge against [plaintiff]." We disagree with the Commission in this respect. The Commission felt that evidence of plaintiff's participation in disciplining Allen was too weak to support such a contention. However, the substantial possibility that Allen would perceive plaintiff as a person who had or would discipline her would have supported a finding in that regard if the Commission had made such a finding. Nevertheless, a finding that such a motivation existed was not required to be made, and any disagreement we may have in regard to the Commission's finding on the collateral issue involved does not require us to reject the Commission's ruling.

The judgment of the circuit court is reversed and the decision of the Commission is affirmed.

Circuit court reversed, and Commission affirmed.

McCULLOUGH and LUND, JJ., concur.