BONNIE J. MORELAND, Plaintiff-Appellant, v. THE DEPARTMENT OF CORRECTIONS *et al.*, Defendants-Appellees.

Fourth District   No. 4—87—0511

Opinion filed March 9, 1988.

John L. Swartz and Thomas P. Schanzle-Haskins, both of Giffin, Winning, Lindner, Cohen & Bodewes, P.C., of Springfield, for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Shawn W. Denney, Solicitor General, and Karen S. Rosenwinkel, Assistant Attorney General, of Chicago, of counsel), for appellees.

PRESIDING JUSTICE GREEN delivered the opinion of the court:

Plaintiff Bonnie J. Moreland appeals a decision of the circuit court of Sangamon County, which upheld an order of the Civil Service Commission (Commission) discharging plaintiff from her employment as a registered nurse with the Department of Corrections (Department). She contends the discharge was arbitrary and in contravention of State public policy. We affirm.

Pursuant to section 9(5) of the Personnel Code (Ill. Rev. Stat. 1985, ch. 127, par. 63b109(5)), charges against the plaintiff were approved August 4, 1986, by the director of the Department of Central Management Services. Amended charges were approved September 17, 1986. Plaintiff requested a hearing August 16, 1986. Following hearings, the Commission's hearing officer issued a recommended decision upholding the discharge January 20, 1987. The Commission adopted the recommended decision February 18, 1987. On March 25, 1987, plaintiff filed her complaint for administrative review. The circuit court affirmed on July 2, 1987. This appeal followed.

Plaintiff was charged with failing to follow medical procedures by taking prescription drugs without authorization while on duty. She was also charged with misusing State property by taking for her own use unauthorized prescription drugs while working at the correctional

center. She allegedly falsified official statements regarding disposal of unused drugs. These actions were in violation of Department rules which appear at sections 305.20, 305.30(a), and 305.30(c) of title 20 of the Illinois Administrative Code. 20 Ill. Adm. Code 305.20, 305.30(a), (c) (1985).

■■ A court reviewing a decision of the Commission approving a discharge of an employee must determine whether: (1) the factual determinations of the Commission are contrary to the manifest weight of the evidence; and (2) the proved facts constituted cause of dismissal. (*Department of Mental Health & Developmental Disabilities v. Civil Service Comm'n* (1981), 85 Ill. 2d 547, 426 N.E.2d 885; *Bodine v. Civil Service Comm'n* (1987), 151 Ill. App. 3d 895, 504 N.E.2d 182.) Plaintiff does not dispute the sufficiency of the evidence to prove the misconduct charged. Rather, she maintains the proved facts were insufficient cause for discharge under the peculiar facts of this case. The thrust of this contention is that her discharge was violative of and inconsistent with a Department policy in regard to drug abuse by employees.

Plaintiff bases her policy argument on the provisions of a document titled "State of Illinois Employee Assistance Program Supervisor's Manual" (Manual) which appears in the record. The introduction to the manual states the program "guarantees confidential referral to treatment for alcoholism and drug dependence without threat of job loss." (Manual, at 1.) A supervisor's role is limited to offering a referral for professional help. Manual, at 4.

The policy is designed to recognize alcoholism and drug abuse as illnesses and encourage employees to voluntarily seek treatment. Under this policy, department heads and supervisors may refer for diagnosis employees who demonstrate unsatisfactory job performance based on apparent medical or behavioral problems. Department heads and supervisors are entrusted to implement the policy and to assure that "no employee with an alcohol or drug problem will have job security or advancement opportunities jeopardized by seeking diagnosis and treatment." Manual, at 5.

Subsection 11 of the policy states "[t]he confidential handling of the referral, diagnosis and treatment of alcoholism and drug abuse is mandated by Federal and State laws and is assured." (Manual, at 5.) Subsection 12 states "[i]mplementation of this policy will not require, or result in, any special regulations, privileges or exemptions from the standard administrative practices applicable to job performance requirements." (Manual, at 5.) A separate section entitled "Confidentiality" states "[t]he information that is exchanged between employee,

Referral Coordinator ***, and community resource is protected by Federal confidentiality laws and cannot be shared with anyone without a written release of information from the employee." Manual, at 6.

The evidence before the Commission was not essentially disputed. Prior to February 27, 1986, plaintiff had been employed by the Department of Corrections at its penal facility at Vandalia as a nurse. Shortly before that date, she sought help from the Fayette County Mental Health Center for her drug abuse problem. On that date, she met with a counselor from the Mental Health Center who arranged for her to enter a treatment program and directed her to make arrangements with her employer for a 30-day leave to obtain the treatment. On February 28, 1986, plaintiff met with her supervisor, Robin Bates, and requested that leave. The evidence indicated Bates asked plaintiff if she had been taking controlled substances from the hospital where she worked, and plaintiff answered that she had. The testimony was undisputed that at some time during the conversation, plaintiff asked Bates to keep the information she had given Bates confidential. However, Bates explained she would keep the information confidential as to others, but that she would have to give the information to her supervisor. The time plaintiff made the request was not established directly, but the record indicates strongly that the request was made after plaintiff had admitted she had been taking controlled substances from the hospital.

The evidence also showed: (1) prior to taking leave for entry to the drug abuse program, plaintiff had performed her work well, with the exception of the misconduct for which the discharge was made; (2) her treatment had apparently been successful; (3) procedures had been developed which would make it harder for her to steal drugs in the future; and (4) she had agreed to submit to random drug testing if permitted to keep her job. However, the evidence also indicated she would be considered something of a risk.

Part of plaintiff's contention is based on a theory that use of her statement to Bates was violative of the express terms of the policy stated in the Manual. We cannot agree. Bates was neither a "referral coordinator" nor an agent of a "community resource" within the meaning of page 5 of the Manual. Plaintiff's statement of taking the controlled substances went beyond a statement of her referral, diagnosis or treatment for drug abuse within the meaning of subsection 11 on page 5 of the Manual. Nothing in the policy statement says that an admission of a commission of misconduct as an employee, although drug related, is subject to confidentiality as between employee and su-

pervisor. Rather, subsection 12 states that the policy does not "require, or result in, any special *** exemptions from the standard administrative practices applicable to job performance requirements."

However, we are concerned because of the loose articulation in the drafting of the policy and the lack of careful explanation through the chain of command to all employees. While lawyers and others sophisticated in the subtle distinctions that may arise from policies of confidentiality can understand the difference between an admission made to a counselor and that to a supervisor, or the difference between an admission of seeking help for a drug problem and an admission of misconduct while being an abuser of controlled substances, others cannot necessarily do so. No evidence indicates that the details of the program were ever explained to plaintiff or to Bates. In fact, an investigator for the Department who interrogated plaintiff after she had returned to work from her leave testified he was not familiar with the details of the program. Furthermore, evidence was introduced that the mental health counselor who worked with plaintiff had indicated to her that she would not lose her job because she sought help. This may have led her to believe that she was in no jeopardy for making her confession to Bates.

Thus, plaintiff's discharge may be misunderstood by many employees and may greatly deter them from seeking drug abuse assistance for fear of losing their jobs. The assistant warden who dealt with plaintiff's case admitted that if it were not for plaintiff's admission to Bates, plaintiff would likely still be employed. We have given careful consideration to this problem. However, we recognize the grave dangers that would arise if we hold that amnesty must be given to all drug abusers who confess to higher employees their misconduct which occurred when they were subject to drug abuse. We also conclude that the impact of this discharge, on the morale and willingness of other employees to come forward, must be a matter to be weighed by the Department rather than by the Commission or the courts.

We are aware that plaintiff made her admission to Bates during the time arrangements were being made for her leave for treatment, and plaintiff's statement was in response to a question by Bates. However, the record does not indicate any absolute reliance on plaintiff's part that what she told Bates would be held in confidence. Rather, the evidence indicated the plaintiff hoped it would.

■ Plaintiff also asserts her discharge is contrary to the public policy set forth in section 2 of the Alcoholism and Substance Abuse Act describing the desirability of programs for early treatment for alcohol and drug abusers so they may be "restored to good health and

again become useful citizens." (Ill. Rev. Stat. 1985, ch. 111½, par. 6302.) We do not deem the discharge here to necessarily be contrary to the foregoing policy. Moreover, more directly on point is section 26.1 of the Illinois Nursing Act, which requires registered professional nurses, who occupy certain positions and who have knowledge of other registered nurses who commit various acts including a conversion of "habit-forming drugs belonging to [a] hospital *** for such nurse's own use" to report this to the Department of Public Health. Ill. Rev. Stat. 1985, ch. 111, par. 3435.1.

The hearing officer of the Commission expressed concern with the question involved here. We share that concern and indicate a desirability that the amnesty and confidentiality aspects of the Department's policy be explained to its employees in simple, understandable language.

We find the decision of the Commission to be neither "arbitrary, unreasonable, [nor] unrelated to the requirements of the service." (*Department of Mental Health & Developmental Disabilities v. Civil Service Comm'n* (1981), 85 Ill. 2d 547, 552, 426 N.E.2d 885, 887.) Accordingly, we affirm.

Affirmed.

LUND and SPITZ, JJ., concur.